(C.D. 2473)

WING COFFEE CO., LTD.
AMERICAN CUSTOMS BROKERAGE CO. } v. UNITED STATES

United States Customs Court, Third Division

(Decided July 7, 1964)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The issue here is whether certain Chinese fruits, known as *larm*, are within the descriptive tariff enumeration of olives in paragraph 744, Tariff Act of 1930. The importer entered preserved *larm* at Honolulu as preserved fruits, not specially provided for, under paragraph 752, with duty at the rate of 35 percent ad valorem. The Honolulu collector liquidated the merchandise as it was entered.

Thereafter, plaintiff filed a protest against the liquidation, claiming that the merchandise properly is dutiable as olives, under paragraph 744. Plaintiff makes two alternative claims under that paragraph:

One, for classification as olives, not specially provided for, dutiable at 5 cents per pound; the other, for classification as olives, dried ripe, dutiable at 2½ cents per pound, under the modification of the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade (T.D. 52373 and T.D. 52423).

The statutory provisions with which this suit is concerned are as follows:

Paragraph 752:

Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, * * * 35 per centum ad valorem.

Paragraph 744:

Olives: * * *; not specially provided for, 5 cents per pound.

Paragraph 744, as modified by T.D. 52373 and T.D. 52423:

Olives:
*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*
Dried ripe_____ 2½¢ per lb.

On trial in Honolulu, plaintiff called Mr. D. C. Chang, who testified. Mr. Chang identified samples of the three varieties of *larm* that are included in this importation. They are *soo larm* (exhibit 1); *wo sang larm* (exhibit 2); and *liong yow larm* (exhibit 3). The case was adjourned for further testimony at San Francisco.

On trial in San Francisco, plaintiff rested without adducing further proofs. Defendant called one witness, Mr. Granville N. White, and introduced two exhibits. One of these (exhibit A) is described as illustrative of the merchandise called *liong yow larm*, the same as exhibit 3. The other (exhibit B) is described as representative of *wo sang larm*, which plaintiff conceded is identical to exhibit 2. The parties also entered into the following stipulation of fact, offered by defendant:

*Canarium album* Raeusch is a species of the botanical family Burseraceae and is native to Southeast Asia. The family Burseraceae is not at all closely related to the Oleaceae, to which family Olea Europaea L., the olive of the Mediterranean region, belongs.

Mr. Chang, testifying in Honolulu for plaintiff, said that he is the secretary-treasurer and bookkeeper of Wing Coffee Co., Ltd., one of the plaintiffs. He has been in its employ for 36 years. He keeps the books and supervises correspondence. Being fluent in both English and Chinese, he translates his firm's correspondence, a great deal of which is in Chinese. He also acts as a court interpreter in Honolulu, and as a translator for the New China Daily Press (which is mentioned only, not identified).

He has been familiar for about 30 years with such merchandise as

these three varieties of *larm*. *Larm* itself, that is, the three varieties here imported, "is not much different," except that *soo larm* has a lighter color, *wo sang larm* is a darker color, and *liong yow larm* is slightly larger and is of a yellowish color, between the *soo larm* and the *wo sang larm*.

Mr. Chang said that the Chinese word *larm* means olive. His company imports 10 other varieties of *larm*, besides the three varieties of this importation. By-products of *larm* include oil, meat of the fruit, and seed. In Hawaii, merchandise such as exhibits 1, 2, and 3 is always bought by and sold to Chinese as *larm*. Sometimes it is sold to Japanese and to Caucasians as Chinese olives; but they, too, "use the Chinese name, which they are very familiar with now." (R. 10.) It is never bought and sold simply as olives.

*Larm* is eaten "as it is," as a "snack before dinner, or after dinner, or even the meat can be used together with other foods to make a dish." (R. 10.) Mr. Chang has never seen *larm* used with alcoholic beverages. (R. 11.)

Mr. Granville N. White, testifying in San Francisco for defendant, stated that his business is importing and packing foods, including olives. He has been in that business since 1920. He deals in both domestic olives and imported olives, manzanilla and queen olives. He knows what is recognized in the trade and commerce of this country as olives. He does not know of any one in the olive business who has dealt with commodities such as exhibits A and B. He, himself, has never seen such merchandise bought or sold in wholesale quantities.

Tariff classification does not necessarily follow botanical or other scientific classification. However, it may be noted that, according to several botanical authorities, the *larm* is a drupe. So, also, is the Mediterranean olive, as are plums, cherries, apricots, and peaches, among other fruits. Drupe is a "fruit consisting of a pulpy, coriaceous, or fibrous epicarp * * * and a hard endocarp (the stone) enclosing a single seed." Webster's New International Dictionary, second edition, 1956.

In our opinion, the fact that the *larm* is a drupe and that an olive is also a drupe, will not suffice to assign *larm* the tariff classification for olives, as it does not suffice to assign that classification to plums and cherries. Botanical family association does not control tariff classification. *United States* v. *C. J. Tower & Sons*, 48 CCPA 87, C.A.D. 770.

What does control tariff classification, in the absence of a proved different commercial meaning, is the common meaning given to the enumerated term in the trade and commerce of the United States. *Neuman & Schwiers Co., Inc.* v. *United States*, 24 CCPA 127, T.D. 48606.

One witness translated the Chinese name for this drupe into the English word "olive," but the fact is, as testified by the same witness, that even in Hawaii these *larms* are never bought and sold as olives, although sometimes they are called for by the name of *Chinese* olives.

The provision in paragraph 744, for olives, is to be construed to embrace olives that are known as such in the trade and commerce of the United States. Those olives that are enumerated, preceding the not-specially-provided-for provision, include olives in brine, green; olives in brine, ripe; olives in brine, pitted or stuffed; and dried ripe olives. As Congress knew, the courts had held, under the 1922 act, that dried *salted* olives did not fall within any of those four enumerations. The 1922 act had no provision for olives that were not specially provided for. That provision was added in the Tariff Act of 1930. There is nothing to suggest that Congress intended to embrace fruits not commonly or commercially known in the United States as olives. Rather, the intention was to add, to the four specially enumerated varieties of olive, language that would embrace all forms of the fruit which is commonly and commercially known as olives.

The Encyclopaedia Britannica, published by the University of Chicago, calls "Olive (*Olea europaea*), the plant that yields the olive oil of commerce * * *" (1947 edition, vol. 16, p. 773). The fruit of that plant, the *olea europaea*, which is also grown in California, is the olive of commerce. It is so understood throughout the United States. Defendant's testimony confirms this.

Examination of the exhibits, both plaintiffs' and defendant's, confirms that these are not the article that is commonly known in the United States as olives.

Both claims to classification as olives, as "dried ripe" and as "not specially provided for," are overruled. Judgment will be rendered accordingly.